UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

Manta Industries Ltd.,
a foreign P. R. of China
Corporation,                        No. 16 Civ. 8308 (LAP)

         Plaintiff,

         -against-

Paul P. Law, aka Paul Law; Yogesh
M. Anand, aka Yogesh Anand, aka
Yogi Anand; Kum S. Casanova, aka
Kum  Casanova,  aka  Kum  Sun
Casanova; Jonathan M. Anand, aka
Jon Anand, aka Jonathan N. Anand;
Lourdes  Law,  aka  Lou  Law,  aka
Lourdes  P.  Law,  aka  Lourdes  W.
Law;  Fashion  Industries,  Ltd.;
XYZ  Inc.s  1-10;  ABC  LLCs  1-10;
John Does 1-10; and Jane Does 1-
10,

         Defendants.
_____

**Findings Of Fact And Conclusions Of Law
December 17, 2024 Damages Inquest Hearing**

On June 7, 2019, Plaintiff filed a Second Amended Complaint.
(Second Amended Compl. ("SAC"), [dkt. no. 59].)  On October 1,
2024, Defendants Paul P. Law and Lourdes Law's answer, (dkt. no.
85), was stricken for violating discovery orders pursuant to Fed.
R. Civ. P. 37(b).  (Dkt. no. 147.)  Also, on November 22, 2024,
Defendants Yogesh M. Anand and Kum Sun Casanova's answer, (dkt.
no. 41), was stricken for violating Fed. R. Civ. P. 37(b) and 55.
(dkt. no. 153).  On December 17, 2024, a damages hearing, Fed. R.

Civ. P. 55(b)(2), occurred to determine the amount of Plaintiff's damages.  (See Dec. 17, 2024 Transcript [dkt. no. 160] ("Tr.").)

Plaintiff appeared at the hearing through counsel. Defendants Paul P. Law and Lourdes Law appeared at the hearing, through counsel and personally.  Defendants Yogesh M. Anand and Kum Sun Casanova did not appear at the hearing.

Below are the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

## I. Findings of Fact

### a. Plaintiff's Second Amended Complaint

1. "On February 18, 2016, a judgment in favor of Plaintiff in a related action, Civil Action No. 12-CV-05094-LAP (S.D.N.Y.), was entered against Rich Kids Jean Corp. ('Rich Kids'), Dani Max Design, Inc. ('DMAX'), Fashion Development Group ('Fashion Development'), and Foldom Industries Ltd ('Foldom') (collectively 'Judgment Debtors')."  (SAC ¶ 11.)

2. "Judgment Debtors have not paid any money to satisfy any portion of the judgment."  (SAC ¶ 12.)

3. "The Judgment Debtor's insiders are Defendants Paul Law and Lourdes Law, husband and wife, (collectively 'The Laws'), and Yogi Anand and Kum Casanova, husband and wife, and Jon Anand[1]

---

[1] On December 11, 2023, the Court terminated Jonathan Anand as a party in this case, at Plaintiff's request due to his bankruptcy proceedings.  (Dkt nos. 142, 144.)

(collectively 'The Anands').  They have been running 'bust out schemes'[2] against Plaintiff, and other victims, for years. Their financial fraud victims have been Mainland China textile manufacturers."  (SAC ¶ 13.)

4.   "Before, and after, entry of the judgment, Defendants' insiders transferred the Judgment Debtors' cash to themselves."  (SAC ¶ 14.)

5.   "Sometimes, they issued checks from the Judgment Debtors' cash to themselves."  (SAC ¶ 15.)

6.   "Most of the time, though, they transferred the Judgment Debtors' cash to other entities, then from the other entities to themselves." (SAC ¶ 16.)

7.   "After they liquidated Plaintiffs' and other victims' textiles into cash, the Judgment Debtors' insiders transferred millions of dollars of the Judgment Debtors' cash to Mainland China bank accounts they controlled."  (SAC ¶ 19.)

8.   "[A]pproximately $1.33M of Judgment Debtor Rich Kids' cash was wire transferred from Rich Kids' JPMorgan Chase Bank account to one of the insiders' bank accounts at Hang Seng

---

[2] "When a wholesaler bilks a manufacturer by ordering large quantities of goods on credit, selling all the goods at below market prices, then refusing to pay for the goods, thus 'busting out' its business. United States v. Crocket, 534 F.2d. 589, 592 (5th Cir. 1976)."  (SAC ¶ 13 n.1.)

Bank in Mainland China.   A list of the wire transfers is attached as Exhibit 3."   (SAC ¶ 20.)

9.   The SAC's Exhibit 3 shows that a total of $1,330,454.40 was wire transferred from a JPMorgan Chase bank account xxx0568, owned by Rich Kids Jeans Corp., to Hang Seng Bank.   (SAC Ex. 3.)

10.   In Exhibit 3, there are 78 wire transfers.   Most of the wire transfers were in the amounts of $15,000, $20,000, $25,000, and $30,000.   Only two wire transfers were not in even denominations of $10.00, $50.00, $100.00, $1,000.00, or $10,000.00; they were in the amounts of $17,243.40 and $12,779.00.   (See id.)

11.   "After transferring the Judgment Debtors' cash to Mainland China banks, the Judgment Debtors' insiders transferred approximately $2.54M of Rich Kids' cash back to the United States to a JPMorgan Chase bank account owned by Defendant Fashion Industries.   A list of the transfers is attached as Exhibit 4." (SAC ¶ 21.)

12.   The SAC's Exhibit 4 shows 106 wire transfers originating from foreign banks—Bank of China, HSBC Bank, and Standard Chartered Bank—to a JPMorgan Chase Bank account # xxx3808 that is owned by Fashion Industries.   The total amount of the wire transfers is $2,543,466.99.   (SAC Ex. 4.)

4

13. "Fashion Industries did not provide any value in exchange for the $2.54M it received."  (SAC ¶ 22.)

14. "Defendant Fashion Industries was incorporated by Defendant Lourdes Law solely to capture the cash, launder it, then transfer it to the Judgment Debtors' insiders directly, and indirectly, to their personal creditors."  (SAC ¶ 25.)

15. "Defendants Lourdes Law and Paul Law directly paid themselves approximately $761,112 from Defendant Fashion Industries' bank account.  They paid themselves with Fashion Industries checks, that they both signed, then made payable to 'cash.'"  (SAC ¶ 26.)

16. "Lourdes Law and Paul Law transferred cash from Fashion Industries' JPMorgan Chase bank account to their personal creditors."  (SAC ¶ 29.)

17. Defendants Lourdes Law, Paul Law, Yogesh Anand, and Kum Casanova "worked with each other to complete the fraudulent conveyances. They held, and hold, dominion and control over Plaintiff's goods (blue jeans) and Judgment Debtors' assets, including their cash."  (SAC ¶ 42.)

18. Defendants Lourdes Law, Paul Law, Yogesh Anand, and Kum Casanova "had personal knowledge about the fraudulent conveyances."  (SAC ¶ 43.)

19. Defendants Lourdes Law, Paul Law, Yogesh Anand, and Kum Casanova "substantially assisted each other with the fraudulent conveyances." (SAC ¶ 44.)

20. Defendants Paul Law, Lourdes Law, Yogesh Anand, and Kum Casanova "all financially benefited from the fraudulent conveyances." (SAC ¶ 45.)

21. The numerous "transfers were part of a continuous scheme among and between the Defendants fraudulently to transfer the Judgment Debtors' assets to themselves." (SAC ¶ 32.)

22. "The Laws and [t]he Anands intended to defraud the Plaintiff as a creditor." (SAC ¶ 37.)

23. "The Laws and [t]he Anands were intentionally hindering, delaying, [and] defrauding Plaintiff from collecting payment for its blue jeans." (SAC ¶ 39.)

### b. The Damages Inquest Hearing

24. At the hearing, Plaintiff's financial fraud expert, Ms. Zhanna Kelley, testified.

25. Counsel for Paul Law, Lourdes Law, Yogesh Anand, and Kum Casanova's attorney had "no objections" to her qualification as an expert witness concerning financial fraud. (Tr. 16:8-13.)

26. Before the hearing, Ms. Kelley reviewed Fed. R. Evid. 1006 charts that summarized the wire transfers. (Tr. 16:16-17:10.)

27.  While reviewing the charts, Ms. Kelley also had reviewed:

a. the business records affidavit of Michelle M. McCall of JPMorgan Chase Bank, sworn to on September 14, 2017, along with wire transfer records, check copies, and bank statements produced by JPMorgan Chase Bank pursuant to Plaintiff's subpoena;

b. the business records affidavit of Lara A. Akinjeji of JP Morgan Chase Bank, sworn to on November 28, 2018, along with wire transfer records, check copies, and bank statements produced by JPMorgan Chase Bank pursuant to Plaintiff's subpoena; and

c. the SAC and its exhibits, particularly Exhibits 3, 4, and 5.

28.  Before Ms. Kelley testified, Plaintiff's counsel requested this Court's permission to self-authenticate the JPMorgan Chase Bank source documents that Ms. Kelley relied upon while reviewing her charts, pursuant to Fed. R. Evid. 902(11) and 803(6)(A)-(C).  (Tr. 7:15-20, 13:8-21.)

29.  Plaintiff's counsel stated that copies of charts prepared by Ms. Kelley, along with copies of the underlying JPMorgan Chase Bank source documents, had been produced to opposing counsel twelve days before the hearing, on December 5, 2024, along with a notice that Plaintiff intended to rely upon and use the charts at the December 17, 2024 hearing.  (Tr. 6:22-8:8.)

30. Plaintiff's counsel informed the Court that he had not received any comments from opposing counsel concerning the December 5, 2024 notice. (Tr. 8:6-8.)

31. Plaintiff's counsel stated that the business record affidavits show that they comply with Fed. R. Evid. 803(6)(A)-(C) because they were made at or near the time by or information transferred by someone with knowledge, that the record was kept in the course of regularly conducted activity, that making the record was in the regular practice of that activity, and that these conditions were written on the business records affidavits produced by JP Morgan Chase. (Tr. 7:2-25, 8:1-5.)

32. These two business record affidavits were marked during the hearing as Hearing Exhibit 2. (Tr. 9:1-6.)

33. Counsel for Defendants Paul Law and Lourdes Law objected to the Court's admission of the business records into evidence. But counsel failed to show how the records produced by JPMorgan Chase indicated a lack of trustworthiness. His numerous objections were overruled, and the two business records affidavits, (Ex. 2), along with Ms. Kelley's charts, (Ex. 3, 4, and 5), were received in evidence. (Tr. 8:9-25, 13:1-19.)

34. While testifying, Ms. Kelley was shown Hearing Exhibit 3, her first chart. She explained that it summarized numerous wire

transfers from a JPMorgan Chase bank account owned by Judgment Debtor Rich Kids Jeans Corp., (Acct. xxx0568), totaling $1,330,454.40, to Hang Seng Bank.  (Tr. 16:16-17:20.)

35. Ms. Kelley was shown Hearing Exhibit 4, her second chart. She explained that it summarized numerous wire transfers from three different banks, for a total of $2,543,466.99, to a JPMorgan Chase Bank account, (Acct. xxx3808), owned by Defendant Fashion Industries Ltd.  (Tr. 17:21-18:11.)

36. Ms. Kelley was shown Hearing Exhibit 5, her third chart.  She explained that it summarized numerous checks issued by Defendant Fashion Industries Ltd. to "cash."  They were issued from a JPMorgan Chase account, account number xxx3808, owned by Fashion Industries Ltd.  (Tr. 18:13-25.)

37. The total of the checks, according to Ms. Kelley, is $755,495.25.  (Tr. 18:20-22.)

38. Ms. Kelley testified credibly that the checks had been negotiated, that is, cashed.  (Tr. 19:4-7.)

39. Ms. Kelley testified credibly that it is not normal for a business to issue numerous checks payable to cash. (Tr. 19:9-12.)

40. Defendant Lourdes Law testified.  She was shown Hearing Exhibit 6, which is a copy of a check issued from an account owned by Fashion Industries Ltd. at JPMorgan Chase Bank issued

9

to McGovern Law Firm LLC.  She testified that she recognized the check and that she signed the check.  (Tr. 20:23-21:24.)

41.  Ms. Law testified she is the president of Fashion Industries Ltd.  (Tr. 21:11-13.)

42.  Hearing Exhibit 6 shows that the check was issued from JPMorgan Chase Bank account number xxx3808.

43.  Lourdes Law's counsel showed her Hearing Exhibit 5.  After reviewing it, she testified that all of the checks issued by Fashion Industries Ltd. to cash were issued to pay vendors. She stated checks were issued to cash because "they wanted [a] better price . . . [T]hese are small transaction[s]. You got to understand the garment business, these are very small amount[s]."  (Tr. 37:14-15.)  The Court did not credit that testimony.

44.  The Court asked Ms. Law: "Why are some of these amounts round numbers, like $1800, $1700, and others are, for example, $3,944, $5,121, very specific odd amounts."  (Tr. 38:6-8.) Ms. Law responded that the checks were for deposits to vendors.  (Tr. 38:9-24.)  The Court did not credit that testimony.

45.  Continuing, the Court asked Ms. Law: "I know what a deposit is, but I'm trying to ask why some of these amounts are very specific, odd amounts, and some of them are just round numbers."  (Tr. 38:25-39:2.)  Ms. Law testified that "[t]he

Round number is for – called full package purchase, in other words we don't have the exact consumption yet."  (Tr. 39:3-5.)  The Court did not credit that testimony.

## II.  Conclusions of Law

46. A default is "an admission of all well-pleaded allegations against the defaulting party."  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006).

47. But "allegations in the complaint with respect to the amount of damages are not deemed true."  Credit Lyonnais Sec. (USA) Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

48. Therefore, a district court "must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Id. (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).

49. Determining damages involves two steps.  First, it requires "determining the proper rule for calculating damages on such a claim," and, second, "assessing plaintiff's evidence supporting the damages to be determined under this rule." Credit Lyonnais, 183 F.3d at 155.

### a. The Proper Rule and Liability

50. In Count 1 of its SAC, Plaintiff seeks to avoid and recover actual fraudulent transfers pursuant to N.Y. Debt & Cred. Law § 276.

51. In addition, in Count 2 of its SAC, Plaintiff alleges that all four defendants conspired with each other to fraudulently transfer the judgment debtors' assets.

52. Liability for an actual fraudulent transfer under N.Y. DCL § 276 is established if a transfer is made with intent to defraud on the part of the transferor. In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2005).

53. Furthermore, anyone with dominion and control over transferred assets is liable as a transferee for the fraudulent transfers. McCormack Fam. Charitable Found. v. Fid. Brokerage Servs., LLC, 195 A.D.3d 420, 410 (1st Dept. 2021).

54. "'In alleging conspiracy, the plaintiff carries the burden of proving (1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage.'" Kashi v. Gratsos, 790 F.2d 1050, 1055 (2d Cir. 1986)(citing Suarez v. Underwood, 426 N.Y.S.2d 208, 210 (N.Y. Sup.Ct. 1980)).

55. Proof of a civil conspiracy under New York law "'connect[s] a defendant with the transaction and . . . charge[s] him with the acts and declarations of his co-conspirators,'" id. at 1054-55 (quoting Green v. Davies, 182 N.Y. 499, 504 (N.Y.

1905), "'and exposes that defendant to joint and several liability for the victim's losses.'" Id.

56. Defendants "intended to defraud the Plaintiff as a creditor." (SAC ¶ 37.)

57. Defendants "were intentionally hindering, delaying, defrauding Plaintiff from collecting payment . . . ." (SAC ¶ 39.)

58. Also, Defendants "worked with each other to complete the fraudulent conveyances. They held, and hold, dominion and control over Plaintiff's goods (blue jeans) and Judgment Debtors' assets, including their cash." (SAC ¶ 42.)

59. All Defendants—Lourdes Law, Paul Law, Yogesh Anand, and Kum Casanova—"had personal knowledge about the fraudulent conveyances." (SAC ¶ 43.)

60. In addition, all Defendants "substantially assisted each other with the fraudulent conveyances." (SAC ¶ 44.)

61. Furthermore, Defendants Paul Law, Lourdes Law, Yogesh Anand, and Kum Casanova "all financially benefited from the fraudulent conveyances." (SAC ¶ 45.)

62. "After they liquidated Plaintiffs' and other victims' textiles into cash, the Judgment Debtors' insiders transferred millions of dollars of the Judgment Debtors' cash to Mainland China bank accounts they controlled." (SAC ¶ 19.)

63. Specifically, the Judgment Debtors' insiders transferred $1,330,454.40 of Rich Kids Jeans Corp.'s cash.  (Tr. 16:16-17:20.)

64. At a later date, the Judgment Debtors' insiders transferred $2,543,466.99, (Tr. 17:21-18:11), of Rich Kids Jeans Corp.'s cash back to the United States to a JPMorgan Chase bank account owned by Defendant Fashion Industries.

65. "Fashion Industries did not provide any value in exchange for the $2.54M it received."  (SAC ¶ 22.)

66. "Defendant Fashion Industries was incorporated by Defendant Lourdes Law solely to capture the cash, launder it, then transfer it to the Judgment Debtors' insiders directly, and indirectly, to their personal creditors."  (SAC ¶ 25.)

67. The numerous "transfers were part of a continuous scheme among and between the Defendants to fraudulently transfer the Judgment Debtors' assets to themselves."  (SAC ¶ 32.)

68. "The New York Court of Appeals has made it clear that the pertinent provisions of the New York Debtor and Creditor Law provide a creditor's remedy for money damages against parties who participate in the fraudulent transfer of a debtor's property and are transferees of the assets and beneficiaries of the conveyance."  Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1172 (2d Cir. 1992)(citing FDIC v. Porco, 75 N.Y.2d 840, 842 (N.Y. 1990)).

14

69. Any defendant that has dominion and control over transferred assets is liable as a transferee for a fraudulent transfer. "Dominion and control is the right to put the money to one's own purposes." McCormack Fam. Charitable Found. v. Fid. Brokerage Servs. LLC, 195 A.D. 3d 420, 421 (N.Y. App. Div. 2021) (internal quotation marks omitted); Gasson v. Premier Cap. LLC, 43 F.4th 37, 42 n.1 (2d Cir. 2022)(quoting McCormack Fam. Charitable Found., 195 A.D. 3d at 420, 421).

70. All four Defendants had dominion and control over the $2,543,466.99 of Rich Kids' cash that had been transferred into the Fashion Industries Ltd. JPMorgan Chase bank account.

71. Plaintiff has established liability for actual fraudulent transfer pursuant to N.Y. Debt. & Cred. Law § 273(a)(1), and are therefore entitled to the remedies set forth in N.Y. Debt. & Cred. Law § 276(a).

72. Also, Plaintiff has established joint and several liability between and among, Defendants Paul Law, Lourdes Law, Yogesh Anand, and Kum Casanova pursuant to its conspiracy claim.

### III. Damages

73. After entering default judgment regarding Defendants' liability for an actual fraudulent transfer under N.Y. DCL § 273(a)(1), the Court must calculate the amount of damages by determining the amount of money wrongfully received by the various transferees. Stochastic, 995 F.2d at 1172

15

(creditor's remedy for money damages against fraudulent transferees).

74. "Judgment Debtors' insiders," (SAC ¶ 19), namely, Paul Law, Lourdes Law, Yogesh Anand, Kum Casanova, and Jon Anand, (SAC ¶ 13), "transferred millions of dollars of the Judgment Debtors' cash to Mainland China bank accounts they controlled." (SAC ¶ 19.)

75. Specifically, "$1.33M of Judgment Debtor Rich Kids' cash was wire transferred from Rich Kids' JPMorgan Chase Bank account to one of the insiders' bank accounts at Hang Seng Bank in Mainland China. A list of the wire transfers is attached as Exhibit 3." (SAC ¶ 20.) The SAC's Exhibit 3 shows a total amount of $1,330,454.40. (Dkt.59-3 at ECF 4.)

76. Verifying this allegation in the SAC, expert witness Ms. Kelley testified credibly that Hearing Exhibit 3 shows $1,330,454.40 transferred from Rich Kids' JPMorgan Chase account number xxx0568 to Hang Seng Bank. During the hearing, she explained that she reviewed the wire transfer and other documents produced by JPMorgan Chase when preparing her chart. (Tr. 16:16-17:20.)

77. "After transferring the Judgment Debtors' cash to Mainland China banks, the Judgment Debtors' insiders transferred approximately $2.54M of Rich Kids' cash back to the United States to a JPMorgan Chase bank account owned by Defendant

Fashion Industries.  A list of the transfers is attached as Exhibit 4."  (SAC ¶ 21.)  The SAC's Exhibit 4 shows a total transfer of $2,543,466.99.  (Dkt. no. 58-4 at ECF 4.)

78. Verifying this allegation in the SAC, expert witness Ms. Kelley testified credibly that Hearing Exhibit 4 shows $2,543,466.99 was wire transferred from various banks in China to JPMorgan Chase bank account owned by Fashion Industries Ltd., JPMorgan Chase account number xxx3808.  (Tr. 17:21-25-18:1-12.)

79. Ms. Kelley explained credibly that "layering" occurs when funds are moved around multiple bank accounts, to multiple entities, to obscure and disguise the origin of the funds. Continuing, a colloquial term for "layering" is "washing." (Tr. 19:17-24.)

80. When the judgment debtors' insiders, Paul Law, Lourdes Law, Yogesh Anand, and Kum Casanova, moved the judgment debtors' funds to different accounts, which eventually landed in an account owned by Fashion Industries, Ltd., they were layering judgment creditor Rich Kids Jeans Corp.'s funds.

81. All four Defendants had dominion and control over the $2,543,466.99 of Rich Kids' cash that had been transferred into the Fashion Industries Ltd. JPMorgan Chase bank account.

82. All four Defendants "substantially assisted each other with the fraudulent conveyances."  (SAC ¶ 44.)

83. Also, the four Defendants "all financially benefited from the fraudulent conveyances." (SAC ¶ 45.)

## Conclusion

84. The Court awards Plaintiff damages against Defendants Paul Law, Lourdes Law, Yogesh Anand, and Kum Casanova, jointly and severally, in the amount of $2,543,466.99.

85. Pursuant to N.Y. CPLR § 5004, simple prejudgment interest at the rate of nine percent (9%) per year shall be added to the $2,543,466.99 judgment amount with a run date of May 1, 2017. This is approximately the midpoint of the wire transfers into Fashion Industries Ltd.'s JPMorgan Chase account that started on December 22, 2015 and ended on September 28, 2018, as shown on the SAC's and Hearing's Exhibit 4.

86. The parties shall confer and submit a proposed judgment consistent with these findings of fact and conclusions of law no later than December 12, 2025.

**SO ORDERED.**

December 2, 2025
New York, New York

*Loretta A. Preska*
_____
LORETTA A. PRESKA
UNITED STATES DISTRICT JUDGE

18